IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DAYS INN WORLDWIDE, INC.,       §
formerly known as Days Inn      §
of America,                     §
                                §
                Plaintiff,      §
                                §  Civil Action No. 3:04-CV-2278-D
VS.                             §
                                §
SONIA INVESTMENTS, a Texas      §
Limited Liability Company,      §
et al.,                         §
                                §
                Defendants.     §

MEMORANDUM OPINION
AND ORDER

The instant litigation arises from the acquisition and unsuccessful operation of a Days Inn hotel property. It involves claims by plaintiff Days Inn Worldwide, Inc. ("DIW") to recover from the entity that acquired the property and/or its investors under a license agreement, written guaranty, and promissory note, and allegations by one of the investors——the defendant-third-party plaintiff——that he was injured by fraudulent and other tortious conduct related to the acquisition, financing, and subsequent sale of the hotel property. DIW and one of the third-party defendants, United Central Bank ("UCB"), move for summary judgment. For the reasons that follow, the court grants in part and denies in part both motions.

I

DIW entered into a License Agreement with defendant Sonia Investments, LLC ("Sonia") to operate a Days Inn facility in

Mesquite, Texas for a 15-year term.  As part of the transaction, defendants Dolatray Patel ("D. Patel"), Jitendra Keshav ("Keshav"), and Sukhabhai Patel ("S. Patel"), who are present or former members of Sonia, signed a written Guaranty of Sonia's performance under the License Agreement.  All four defendants executed an initial fee promissory note ("Note") in the sum of $10,000.  DIW alleges that Sonia repeatedly failed to comply with various terms the License Agreement——in particular, that it failed six quality assurance inspections and did not pay periodic fees ("Recurring Fees").  DIW later terminated the agreement.  It contends that $5,000 of the Note balance is due and unpaid.

DIW sues Sonia on theories of breach of contract and unjust enrichment to recover liquidated damages under the terms of the License Agreement and "Recurring Fees" for breach of the License Agreement.  DIW sues D. Patel, Keshav, and S. Patel to recover on their Guaranty of Sonia's performance under the License Agreement. It sues all four defendants for breach of contract and unjust enrichment to recover the unpaid balance of the Note.

As third-party plaintiff, Keshav sues third-party defendants Chhaganbhai Patel, Harshad Desai, Satish D. Patel, Hemlataben A. Patel, Jagdish K. Patel, Chetna Hira, Rajnikant M. Patel, Balvantbhai Patel ("B. Patel"),[1] Nitin Jariwala ("Jariwala"),

---

[1]B. Patel is also identified in the briefing as "Balvant Patel."  *See, e.g.,* Keshav July 13, 2006 Br. 1.

Rakeshkumar Patel, and UCB, alleging that they are liable for indemnification and contribution, securities fraud, breach of contract, breach of fiduciary duty/minority oppression, tortious interference with contract, fraudulent inducement, fraud, fraudulent transfer under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), attorney's fees, costs, and expenses, conversion, and civil conspiracy.

DIW moves for summary judgment on its claims against all defendants.  Only defendant Keshav has responded to the motion. UCB moves for summary judgment dismissing Keshav's third-party claims against it.

II

The court turns initially to DIW's summary judgment motion.

A

DIW maintains that it is entitled to recover for breach of contract[2] from Sonia under the License Agreement, from D. Patel, Keshav, and S. Patel under the Guaranty, and from all four defendants under the Note.  Specifically, it posits that it has the right to recover Recurring Fees in the sum of $104,615.78, liquidated damages in the sum of $119,000, and prejudgment

_____

[2]Although DIW asserts an unjust enrichment claim in its second amended complaint, it does not appear to rely on this theory in seeking summary judgment.

- 3 -

interest[3] under the License Agreement, and to recover the $5,000
unpaid balance of the Note and prejudgment interest.[4]  Under New
Jersey law, which controls this case, "to establish a breach of
contract claim, a plaintiff has the burden to show that the parties
entered into a valid contract, that the defendant failed to perform
his obligations under the contract and that the plaintiff sustained
damages as a result."  *Murphy v. Implicito*, 2005 WL 2447776, at *4
(N.J. Super. Ct. App. Div. Sept. 22, 2005) (per curiam)
(unpublished opinion) (citing *Coyle v. Englander's*, 488 A.2d 1083,
1088-89 (N.J. Super. Ct. App. Div. 1985)).

B

Because DIW will bear the burden of proof at trial on its
breach of contract claim, to obtain summary judgment, it "must
establish 'beyond peradventure' all of the essential elements of
the claim."  *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*,
878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting
*Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  DIW

_____

[3]In the "Conclusion" section of its brief, DIW posits that it
is entitled to contractual post-judgment interest at the rate of
1.5%.  DIW has failed to demonstrate through adequate briefing that
it is entitled to post-judgment interest at a rate greater than
that which would be awarded under 28 U.S.C. § 1961.  Accordingly,
unless DIW establishes at trial or through a procedurally proper
submission that it can recover post-judgment interest at a higher
rate, the court will award such interest according to § 1961.

[4]DIW also seeks attorney's fees and costs.  As the court
explains *infra* at § VII, attorney's fees are recoverable by the
prevailing party in an amount to be determined in response to a
properly filed Fed. R. Civ. P. 54(d) application.

has adduced evidence that proves its claims under the License Agreement, Guaranty, and Note. Sonia has not contested liability under the License Agreement or Note, and D. Patel and S. Patel have not challenged liability under the Guaranty or Note. None of these three defendants has responded to DIW's motion. Although their failure to respond does not permit the court to enter a "default" summary judgment against them, the court is permitted to accept DIW's evidence as undisputed. *Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.) (citing *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988)). When accepted under this standard, DIW's proof permits the conclusion that it has proved beyond peradventure each essential element of its breach of contract claim against Sonia, D. Patel, and S. Patel. Accordingly, the court holds that DIW is entitled to recover from Sonia for breach of contract under the License Agreement and Note and from D. Patel and S. Patel under the Guaranty and Note.[5]

C

In Keshav's response to DIW's motion, he does not dispute several fundamental premises of the motion, and he generally accepts the evidence on which DIW relies. Nevertheless, he opposes summary judgment on four grounds: DIW has overstated the amount of Recurring Fees to which it is entitled and is attempting to collect

---

[5]The court discusses DIW's claim for attorney's fees and costs *infra* at § VII.

fees for a reservation system to which it denied Sonia access for over one year; DIW has failed to mitigate its damages; DIW is not entitled to recover liquidated damages because the liquidated damages provisions of the License Agreement are unenforceable penalties; and DIW is not entitled to prejudgment interest on liquidated damages.  The court considers these arguments below.

### III

Keshav contends first that DIW has overstated the past-due Recurring Fees that it is entitled to recover and is attempting to collect fees for a reservation system to which it denied Sonia access for over one year.

### A

DIW maintains that it has established that it is entitled to Recurring Fees in the amount of $104,615.78.[6]  It seeks payment of past-due fees assessed for reservation system use, marketing, inspection, royalty payments, and other fees.  Keshav argues that, under the License Agreement, DIW is entitled to only two types of Recurring Fees: a royalty fee and a reservation fee.  He maintains that Recurring Fees do not include marketing, maintenance, or any other fees.  Keshav challenges DIW's calculation of $104,615.78, contending that the unpaid royalty and reservation fees total $83,762.96, and that other fees totaling $17,276.19 are not

_____

[6]DIW relies on §§ 7 and 18.4 and Schedule C of the License Agreement.

recoverable as Recurring Fees.  He also asserts that DIW cannot fully recover for standard reservation fees that are normally proper because, in October 2000, DIW suspended Sonia's access to and participation in the reservation system, and DIW is attempting to recover $19,300 in fees that accrued after the suspension occurred.  Insofar as the License Agreement purports to allow DIW to charge reservation fees during suspension periods, Keshav complains that DIW is not entitled to recover fees for services that it did not provide, because the provision of the License Agreement that purports to allow DIW to charge for reservation fees during suspension periods is an unenforceable stipulated damages clause.  He therefore opposes DIW's motion, contending that it has overstated the amount of unpaid Recurring Fees by at least $17,276.19 for unauthorized marketing costs and by $19,300 for reservation fees for services DIW did not actually provide Sonia, resulting in a balance that is at least $36,576.19 lower than claimed.

B

To decide whether DIW has established that it is entitled under the License Agreement to recover as Recurring Fees more than royalties and reservation system fees, the court begins by interpreting the License Agreement.  Under New Jersey law, when the terms of a contract are clear, "it is the court's duty to enforce the contract as written so as to fulfill the objectively reasonable

expectations of the parties." *N. J. Dep't of Envtl. Prot. v. Signo Trading Int'l, Inc.*, 562 A.2d 251, 258 (N.J. Super. App. Div. 1989) (citation omitted), *aff'd*, 612 A.2d 932 (N.J. 1992). The determination whether a contractual term is clear or ambiguous is a question of law. *Schor v. FMS Fin. Corp.*, 814 A.2d 1108, 1112 (N.J. Super. App. Div. 2002) (citing *Nester v. O'Donnell*, 693 A.2d 1214, 1220 (N.J. Super. App. Div. 1997)).

> An ambiguity in a contract exists if the terms of the contract are susceptible to at least two reasonable alternative interpretations[.] To determine the meaning of the terms of an agreement by the objective manifestations of the parties' intent, the terms of the contract must be given their "plain and ordinary meaning."

*Id.* (quoting *Kaufman v. Provident Life & Cas. Ins. Co.*, 828 F. Supp. 275, 283 (D.N.J. 1992), *aff'd*, 993 F.2d 877 (3d Cir. 1993)).

Under the License Agreement, the term "'Recurring Fees' means fees paid to [DIW] on a periodic basis, including without limitation, Royalties, Reservation System User Fees, and other reservation fees and charges stated in Section 7." P. App. 34. Recurring Fees thus include all fees that Sonia paid to DIW on a periodic basis. DIW has shown, without genuine and material dispute, that these fees included assessments not only for royalties and the reservation system but also for marketing and facility inspection. P. App. 141-146 (Itemized Statement). Keshav does not contest DIW's evidence that the claimed fees were assessed on a periodic basis or, if payable, were correctly calculated.

- 8 -

Rather, he opposes DIW's claim on the basis of a mistaken interpretation of the License Agreement.

Accordingly, the court holds that DIW has established beyond peradventure that it is entitled to recover as Recurring Fees all the types of periodic fees for which it sues. For reasons the court explains *infra* at § IV(B), this recovery will be reduced by any sum that Keshav establishes at trial is attributable to a failure by DIW to mitigate its damages.

C

Keshav also argues that part of the Recurring Fees sought are for reservation system use fees charged during a period when Sonia was suspended from using the system and therefore are improperly assessed under an unenforceable liquidated damages clause. The court addresses this argument *infra* at § V(D).

IV

Keshav contends second that DIW is not entitled to all the damages it seeks because DIW failed to take reasonable steps to mitigate its damages, and that there is a genuine issue of material fact concerning the extent of the damages that should be awarded.

A

Keshav asserts that DIW had reason to know that the hotel property had experienced financial difficulties even before Sonia entered into the License Agreement; the facility failed six quality inspections during an 18-month period, resulting in warnings from

DIW that the License Agreement could be terminated, but DIW waited over 18 months after the first failure to terminate the agreement; Sonia stopped paying Recurring Fees and filing monthly revenue reports in July 2000, but DIW waited almost six months before warning that this conduct was a material default under the License Agreement that must be cured; and DIW warned Sonia that if payment and the reporting forms were not received in ten days, DIW could terminate the license to operate the facility, it later sent similar warnings, but it failed to mitigate damages and terminate the License Agreement.  In sum, Keshav maintains that by July 2000 DIW knew the facility had a history of financial instability, it had failed inspections, Sonia had stopped paying Recurring Fees and filing monthly reports, and DIW had acknowledged in letters that Sonia had breached the License Agreement and that DIW could terminate it at any time, but DIW permitted its damages to accrue for approximately 18 months before terminating the License Agreement, thereby failing to mitigate its damages.  Keshav therefore posits that the amount of DIW's damages must be determined at trial.

DIW replies that Keshav's mitigation defense fails because defendants had the same opportunity to avoid incurring the Recurring Fees that DIW seeks, such as by terminating the License Agreement before DIW did.  DIW also maintains that Keshav has failed to establish that DIW's damages are capable of mitigation.

It complains that he relies on Sonia's failures to comply with the terms of the License Agreement during an 18-month period and the conclusory claim that DIW had reason to know that Sonia would not perform and that it had a duty to take reasonable steps to mitigate, without evidence that DIW could or should have mitigated. DIW posits that, absent evidence that DIW's damages were capable of mitigation, Keshav has not raised a fact issue concerning this affirmative defense.  It also asserts that Keshav has not met his burden to establish that DIW acted unreasonably, such as through evidence that another licensor in DIW's position would have terminated the agreement earlier.  DIW points to a lack of evidence of the surrounding facts and circumstances of the parties' relationship, their communications, or steps that Sonia was taking to comply with the License Agreement during the 18-month period that would enable an assessment of whether DIW's conduct was unreasonable.  DIW argues that, absent such proof, Keshav has not raised a fact issue that supports his mitigation defense.

B

For procedural reasons, the court cannot resolve the mitigation issue at the summary judgment stage.  Under New Jersey law, "'the burden of proving facts in mitigation of damages rest[s] upon the party breaching the contract.'"  *Ingraham v. Trowbridge Builders*, 687 A.2d 785, 791 (N.J. Super. App. Div. 1997) (quoting *Cohen v. Radio-Elecs. Officers*, 645 A.2d 1248, 1259 (N.J. Super.

- 11 -

App. Div. 1994) (citation omitted)).   "[T]he breaching party has the burden of proving that damages are capable of mitigation." *Id.* at 790-91 (citing *Sommer v. Kridel*, 378 A.2d 767 (N.J. 1977)). "Damages will not be recovered to the extent that the injured party could have avoided his losses through reasonable efforts and without undue risk, burden or humiliation." *Id.* (citing Restatement (Second) of Contracts § 350 (1), (2) (1981)).   The question whether DIW's efforts to mitigate its damages were reasonable "'is a question for the trier of fact.'" *Id.* (quoting *Higgins v. Lawrence*, 309 N.W.2d 194, 196 (Mich. Ct. App. 1981)). The duty to mitigate, however, "is not applicable where the party whose duty it is primarily to perform the contract has equal opportunity for performance and equal knowledge of the consequences of the performance." *Id.* (citations omitted).

Because DIW is moving for summary judgment on claims as to which it will have the burden of proof at trial, it must establish its right to summary judgment relief beyond peradventure.  Although DIW will not have the burden at trial of proving that it mitigated its damages, to obtain summary judgment where the mitigation defense has been pleaded, DIW is obligated to point to the absence of evidence to support the mitigation defense.  This is because for a party who will not have the burden of proof as to a claim or defense at trial to obtain summary judgment, it must point the court to the absence of evidence to support an essential element of

the claim or defense. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the party does so, the nonmovant must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). In its summary judgment motion, DIW neither moved for summary judgment on Keshav's mitigation defense nor pointed to the absence of evidence to support the defense. Because DIW did not challenge defendants' ability to prove the mitigation defense at trial, Keshav was not on notice that he was obligated to adduce evidence that would permit a reasonable trier of fact to find that DIW did not mitigate its damages. And because, as here, DIW must meet the beyond peradventure standard to obtain summary judgment on each of its claims in the amounts for which it sues, DIW cannot obtain summary judgment where the mitigation defense is as yet unresolved and may result in a reduction of the amounts awarded.

Accordingly, although DIW has established beyond peradventure that it is entitled to recover from Keshav under the Guaranty (and, because Keshav does not contest all the relief DIW seeks, for damages in *some* amount), the mitigation defense must be resolved by trial before the amount of DIW's recovery can be calculated.

V

Keshav contends third that DIW is not entitled to liquidated damages because they are an unenforceable penalty under New Jersey

- 13 -

law.  And as noted above, he maintains as a component of his first argument that the reservation fees charged during the period when Sonia was suspended from using the system are being assessed under an unenforceable stipulated damages clause.

A

Keshav posits that the License Agreement has one clearly defined liquidated damages provision——in §§ 12.1 and 18.5——and a proviso that functions as one——§ 7.1.2.  Section 18.5 provides for liquidated damages not to exceed $1,000 for each guest room of Sonia's facility (i.e., 119 x $1,000 = $119,000).  According to Keshav, § 7.1.2 is a "hidden" liquidated damages clause because it requires Sonia to pay reservation system fees even when suspended from using the system.  Keshav argues that New Jersey law does not allow liquidated damages that are meant to be punitive rather than compensatory, and that the reservation fees are punitive and act as a liquidated damages clause because DIW was not providing Sonia a service with these fees.  Keshav contends that the question whether a stipulated damages clause is enforceable is one of law for the court, and he maintains that this determination may require that underlying fact issues be resolved.  Keshav posits that the court must apply a reasonableness standard, including consideration of DIW's duty to mitigate its damages, and he asserts that the liquidated damages provisions are unreasonable because DIW's liquidated damages exceed the actual damages it claims to have

sustained, or they allow damages where DIW sustained none.  He also argues that because the court must consider DIW's duty to mitigate damages, and because this duty presents a fact issue to be decided at trial, the court cannot now rule on liquidated damages.  Keshav also contends the unpublished cases on which DIW relies are inapposite and argues that a published decision supports the conclusion that a clause similar to the one at issue here is unenforceable, because the provisions set damages at a much higher amount than would have been calculated based on Recurring Fees.

DIW replies that Keshav's arguments fail because they are based only on the false premise that DIW's actual damages are overstated.  Contending that the questions of reasonableness and enforceability of a liquidated damages provision are questions of law for the court, and asserting that the provisions are presumptively reasonable, DIW argues that Keshav has the burden of raising a fact issue that rebuts this presumption.  DIW maintains that of the four factors in the reasonableness test, Keshav focuses only on one——the amount of actual damages sustained——to posit that the liquidated damages provision is unreasonable.  It argues that Keshav does not dispute that actual damages for breach of the agreement are extremely difficult to estimate, or question the parties' good faith attempt to fix adequate compensation for DIW's loss resulting from premature termination of the Agreement, but merely claims that the liquidated damages are a penalty because

they are disproportionate to the actual damages sustained.   DIW also distinguishes the case on which Keshav relies, noting that in the instant case, the actual past due Recurring Fees are only $15,000 less than the liquidated damages amount of $119,000.

Concerning Keshav's argument that the reservation fees charged under § 7.1.2 during a period when Sonia was suspended from using the system are unenforceable stipulated damages, DIW contends that the fees are not a penalty because the undisputed evidence shows that the costs of the reservation system are allocated across all of DIW's licensees.   It maintains that Sonia's obligation to fund the reservation system is not a penalty but is compensatory and an element of the total franchise fee.   DIW also posits that Keshav has not met his obligation to show that the reservation system fees charged during suspension periods are unreasonable.

                                B

     "Whether a liquidated damages clause is enforceable is a question of law for the court[.]"   *Naporano Assocs. v. B & P Builders*, 706 A.2d 1123, 1127 (N.J. Super. App. Div. 1998) (citing *Wasserman's Inc. v. Middletown*, 645 A.2d 100, 105 (N.J. 1994)).

> Damages for breach of either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof.   A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty.

*Id.* at 1128 (citations omitted).   "'The overall single test of

                            - 16 -

validity is whether the [stipulated damage] clause is reasonable under the totality of the circumstances[.]'" *Metlife Capital Fin. Corp. v. Washington Ave. Assocs.*, 732 A.2d 493, 495 (N.J. 1999) (brackets in original) (quoting *Wassenaar v. Panos*, 331 N.W.2d 357, 361 (Wis. 1983)).

"Liquidated damages provisions . . . are presumptively reasonable and the party challenging the clause bears the burden of proving its unreasonableness." *Id.* at 496 (citing *Wasserman's, Inc.*, 645 A.2d at 107-08). Because DIW will not have the burden of proving the reasonableness element at trial, it need not establish reasonableness beyond peradventure to obtain summary judgment. *See Celotex Corp.*, 477 U.S. at 323. Keshav may defeat summary judgment on liquidated damages, however, by demonstrating the existence of a genuine issue of material fact regarding the enforceability of the clause.

C

The court considers initially whether the sum of $119,000 in liquidated damages is an unenforceable penalty.[7] Keshav maintains that liquidated damages are unreasonable because of DIW's actual

---

[7]DIW contends that liquidated damages cannot be less than $1,000 per hotel guest room and that Keshav has adduced no evidence that the amount of liquidated damages is unreasonable. Keshav responds that liquidated damages cannot exceed $1,000 per room and that §§ 12.1 and 18.5 of the License Agreement fix unreasonably large liquidated damages in light of DIW's actual loss. The court need not now decide whether the agreement specifies $1,000 per room as the maximum or minimum liquidated sum because neither party's argument is affected by this distinction.

losses.  He states that although it is difficult to assess actual damages because DIW has overstated its past-due Recurring Fees and has failed to mitigate its damages, DIW's liquidated damages exceed even the actual damages that it claims to have sustained.  Keshav presumably refers to the sum of $104,615.78 in claimed Recurring Fees.

Relying on *Shree Ganesh, Inc. v. Days Inn Worldwide, Inc*., 192 F.Supp.2d 774 (N.D. Ohio 2002) (applying New Jersey law), Keshav appears to suggest that the degree of difference between claimed actual loss and liquidated damages is evidence of their unreasonableness.  Keshav also posits that summary judgment is improper because DIW's duty to mitigate, to the extent it bears on reasonableness, is a fact issue to be determined by a trier of fact.

1

The court has rejected *supra* at § III(B) Keshav's argument that DIW overstated its actual loss in the sum of $104,615.78 for the 18-month period that preceded termination of the License Agreement.  The claimed liquidated damages, intended to approximate future damages over a two-year period following termination, are $119,000.  Thus even assuming that *Shree Ganesh* governs, it is distinguishable factually.  The difference between actual losses and liquidated damages in that case was $166,000, as compared to a

difference of $14,384.22 here.  *See Shree Ganesh*, 192 F.Supp.2d at
786.  If anything, a comparison that accounts for the six-month
time differential reveals the claimed liquidated damages to be a
reasonable estimate of future loss.  Having rejected Keshav's
overstatement-based argument, the court is left to consider
Keshav's failure-to-mitigate argument.

2

A party's failure to mitigate damages is relevant to the
court's assessment of the reasonableness of a liquidated damages
clause.  *See Wasserman's, Inc.*, 645 A.2d at 110-11.  The mere
raising of a mitigation defense, however, is insufficient to
overcome the presumption that a liquidated damages clause is
reasonable.  "'[T]he burden of proving facts in mitigation of
damages," like the burden of demonstrating the unreasonableness of
a liquidated damages clause, "rest[s] upon the party breaching the
contract."  *Ingraham*, 687 A.2d at 791 (citing *Cohen*, 645 A.2d at
1259).  In other words, Keshav must ultimately show not only that
DIW failed to take reasonable steps in mitigation, but that this
failure resulted in an actual loss so low as to render the amount
of liquidated damages unreasonable as a matter of law.

Keshav asserts that because the question whether DIW took
reasonable steps in mitigation of damages is one fact that bears on
the reasonableness of a liquidated damages clause, summary judgment
on liquidated damages is improper.  The court agrees.

Although DIW's alleged failure to mitigate damages is only one element of the multi-faceted reasonableness inquiry, Keshav may be able prove at trial that DIW's failure to mitigate is substantial enough to render the damages fixed by the liquidated damages clause unreasonably large in light of actual loss.[8]

3

Accordingly, the court holds that DIW is entitled to recover liquidated damages in the amount of $119,000, unless Keshav is able to prove at trial that DIW failed to mitigate its damages to such a degree that the liquidated damages it seeks are unreasonable and therefore an unenforceable penalty.

D

The court addresses next whether § 7.1.2, which permits DIW to assess reservation fees during suspension periods, is an unenforceable penalty.  It decides whether DIW has established that it is entitled to recover $19,300 in reservation system use fees that it assessed after it suspended Sonia's access to the system, and whether it has demonstrated that Sonia's failure to pay the fees is a breach of the License Agreement for which DIW can recover from Keshav under the Guaranty.

The court disagrees with Keshav's characterization of § 7.1.2

---

[8]Although the court is unable to quantify the difference between actual losses and liquidated damages (much less hold at this time that the putative disparity is so large as to render unreasonable the amount of liquidated damages sought), this is not Keshav's burden as the summary judgment nonmovant.

as a hidden and unenforceable penalty clause, or that it acts as one.  Under New Jersey law,

> *liquidated damages* is the sum a party to a contract agrees to pay if he breaks some promise, and which, having been arrived at by a good faith effort to estimate in advance the actual damages that will probably ensue from the breach, is legally recoverable as agreed damages if the breach occurs.

*Wasserman's Inc.*, 645 A.2d at 105-06 (citing *Westmount Country Club v. Kameny*, 197 A.2d 379 (N.J. Super. Ct. App. Div. 1964)).  By contrast,

> [a] *penalty* is the sum a party agrees to pay in the event of a breach, but which is fixed, not as a pre-estimate of probable actual damages, but as a punishment, the threat of which is designed to prevent the breach.

*Id.* at 106.  As the court explained *supra* at § V(B), liquidated damage provisions are presumptively valid, but "[p]arties to a contract may not fix a penalty for its breach."  *Id.*  Having examined § 7.1.2 in light of these principles of New Jersey law, the court concludes as a matter of law that it is not an unenforceable penalty clause.

Section 7.1.2 neither fixes an amount that Sonia must pay in the event of breach nor prescribes any formula from which such a sum can be derived.  It provides that reservation system use fees are to be paid on a periodic basis for the duration of the 15-year license agreement, "from [its] Opening Date until the end of the

Term, including during suspension periods."[9]  P. App. 18.  In other words, it requires Sonia, during periods of lawful suspension, to continue to pay the reservation system fees that it is otherwise contractually obligated to pay DIW for the duration of the contract.  P. App. 17-18.  The court is thus unable to conclude from Keshav's cursory argument or from the summary judgment record that the clause is punitive in nature or designed solely to prevent Sonia from breaching the License Agreement.  The clause appears instead to be aimed at ensuring compensation to DIW for the cost of maintaining the reservation system, to which a non-defaulting licensee would be normally granted access for the term of the agreement.  Moreover, Keshav cites no authority to support the contention that § 7.1.2 is an unenforceable penalty solely because it permits DIW to assess fees during periods of the 15-year license term when service is suspended as a result of default.

Accordingly, the court holds that DIW is entitled to the claimed $19,300 in past-due reservation system fees that accrued during the suspension period, minus any amount that Keshav can prove at trial is attributable to DIW's failure to mitigate damages.

_____

[9]A suspension of access to the system may occur under the contract "for any default or failure to pay or perform," and the defaulting party is afforded the opportunity to cure the breach. P. App. 22.

VI

A

Keshav opposes summary judgment on a fourth ground, contending that DIW cannot recover prejudgment interest on its liquidated damages under §§ 12.1 and 18.5 of the License Agreement. He maintains that DIW relies on § 7.3 of the License Agreement for this proposition, but § 7.3 is found under the main section for "Recurring Fees, Taxes and Interest," the liquidated damages provisions are found in §§ 12.1 and 18.5, neither section provides for interest, and neither refers to § 7.3. He points out that one of the unpublished decisions that DIW cites in its brief reaches the same conclusion regarding a similar agreement. DIW replies that Keshav has misinterpreted § 7.3, which provides for interest at 1.5% per month for any past due amount payable to DIW under the License Agreement.

B

"A contract must be construed as a whole and the intention of the parties is to be collected from the entire instrument and not from detached portions." *In re Fairfield Gen. Corp.*, 383 A.2d 98, 106 (N.J. 1978) (quoting 9 Williston on Contracts § 46, at 64 (rev. ed.)). Assuming *arguendo* that New Jersey law permits recovery of prejudgment interest on liquidated damage claims at a contractually defined rate, DIW has failed to establish beyond peradventure that the terms of the License Agreement provide for 1.5% per month in

- 23 -

prejudgment interest on liquidated damages.

Section 7.3 provides, in relevant part, that interest at the rate of 1.5% per month "is payable when you receive our invoice on any past due amount payable to us under this Agreement"  P. App. 18.  DIW emphasizes the words "on any past due amount" to argue that it is entitled to recover prejudgment interest on liquidated damages.  Construing this clause and the License Agreement as a whole, however, the court concludes that DIW's reliance on these words is misplaced.  Under § 7.3, interest is payable on Sonia's receipt of an invoice for a past-due amount.  Section 7.3 does not refer to liquidated damages claims, and under the License Agreement, liquidated damages are neither periodically assessed, considered "past due," nor invoiced.  They are payable on termination of the License Agreement.

Even if the court were to disregard § 7.3's reference to invoiced past-due amounts, it would still hold that prejudgment interest on liquidated claims at a contractually-prescribed rate cannot be recovered.  This is because § 7.3 relates to past-due recurring fees and taxes assessed under § 7, not to liquidated damages recoverable under §§ 12.1 and 18.5.  Section 7.3 is a subsection of § 7, which governs the payment of "Recurring Fees, Taxes and Interest."  Neither § 7 nor any of its subsections provides for the recovery of interest on liquidated damages.  Moreover, neither § 12.1 nor § 18.5 expressly provides for

- 24 -

prejudgment interest nor refers to § 7.3.  Construing the License Agreement as a whole, the court concludes that § 7.3 is inapplicable to the liquidated damages provisions of §§ 12.1 and 18.5.

Accordingly, the court holds that DIW has failed to establish that it is entitled to summary judgment awarding it contractual prejudgment interest on liquidated damages.

C

Keshav does not contest DIW's claim for 1.5% per month in prejudgment interest on Recurring Fees and the Note claim pursuant to § 7.3 of the License Agreement and the terms of the Note.  The court is permitted to accept DIW's proffered evidence as undisputed.  *Tutton,* 733 F. Supp. at 1117.  The plain language of the License Agreement and the Note support DIW's claim.  Section 7.3 provides that "'Interest' is payable when you receive our invoice on any past due amount payable to us under this Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid."  P. App. 49.  The Note provides that "the outstanding principal balance shall bear simple interest at a rate equal to the lesser of eighteen (18%) per annum or the highest rate allowed by applicable law from its due date until paid."  *Id.* at 47.

Accordingly, the court holds that DIW is entitled to recover

prejudgment interest from Keshav at the contractually-defined rate of 1.5% per month on its past-due Recurring Fees claim and its claim for the unpaid balance on the Note.

VII

DIW contends that defendants are contractually obligated to pay reasonable attorney's fees and costs associated with enforcement of the License Agreement, Guaranty, and Note. Although "New Jersey has a strong policy disfavoring shifting of attorneys fees." *N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.*, 730 A.2d 843, 848-49 (N.J. 1999) (citing *McGuire v. Jersey City*, 593 A.2d 309, 317 (1991)). "[A] party may agree by contract to pay attorney's fees." *Id.* (citing *Cmty. Realty Mgmt., Inc. v. Harris*, 714 A.2d 282, 293 (N.J. 1998)). "[C]ourts," however, "will strictly construe [fee shifting] provision[s] in light of the general policy disfavoring the award of attorneys' fees." *Id.* (citing *McGuire*, 593 A.2d at 317).

DIW proffers evidence of the unambiguous fee shifting provisions in both the License Agreement and Note, along with the affidavit of one of its counsel, in support of invoices in the amount of $37,877.20 for legal services rendered. P. App. 448, 454. No defendant has responded to this request, and none has contested DIW's legal basis for recovering attorney's fees and costs or its computation of the amount. Because this case must be tried and the amount of fees and costs that DIW is entitled to

recover may be affected by services rendered in connection with trial and the relief awarded as a result of the trial, the court declines to grant summary judgment for such fees and costs. The court holds that the License Agreement and Note both provide for fee shifting, and that DIW is entitled to recover its reasonable attorney's fees and costs in amounts to be determined on proper application under Fed. R. Civ. P. 54(d).

VIII

In sum, the court holds that DIW is entitled to recover judgment from Sonia for breach of the License Agreement and from D. Patel and S. Patel for breach of the Guaranty as follows: $104,615.78 for unpaid Recurring Fees, $119,000 for liquidated damages, and prejudgment interest at the rate of 1.5% per annum under the License Agreement and Guaranty. DIW is entitled to recover judgment from Sonia, D. Patel, and S. Patel in the amount of $5,000 on the Note, together with prejudgment interest. It is also entitled to recover attorney's fees and costs in an amount to be determined by the court after it files a proper Rule 54(d) application.

DIW is entitled to partial summary judgment against Keshav as follows: for the $5,000 unpaid balance of the Note and prejudgment interest thereon; $104,615.78 in Recurring Fees, minus any amount that Keshav is able to prove at trial that DIW should have mitigated, and prejudgment interest on the Recurring Fees awarded;

- 27 -

$119,000 in liquidated damages, unless Keshav can prove at trial that DIW failed to mitigate its damages and that this failure renders an award of liquidated damages unreasonable; and attorney's fees and costs on its Note and Guaranty claims in amounts that the court awards on proper Rule 54(d) application.

IX

The court now considers UCB's summary judgment motion, in which it seeks dismissal of Keshav's third-party action.[10]

In 1999, at the inducement of Jariwala and B. Patel, Keshav invested $145,000 to obtain a minority membership interest in Sonia for the purpose of purchasing the Mesquite Days Inn.[11]  Keshav believed that Sonia was purchasing the hotel property from Jariwala for $2.85 million, using a UCB loan of $2.2 million for most of the purchase price.  He later learned that UCB did not fund the entire $2.2 million but instead created two $100,000 certificates of

---

[10]Keshav moves to strike UCB's motion as untimely.  The court denies the motion.  The deadline for UCB to file the motion was June 15, 2006.  UCB mistakenly attempted to file the motion electronically on the due date.  The court was not then accepting filings electronically, so it was necessary that UCB file the motion on paper, which it did on June 16, 2006.  Under these circumstances, the court declines to strike UCB's motion.
Keshav also moves for leave to file a surreply in opposition to UCB's motion for summary judgment.  The court denies the motion for the reasons stated *infra* at § XX.

[11]The court recounts the evidence in a light favorable to Keshav as the summary judgment nonmovant and draws all reasonable inferences in his favor.  *E.g., U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.) (citing *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000)).

deposit ("CDs") in the names of Jariwala's brother-in-law and B. Patel's father.  He also discovered that the sale price for the hotel was $2.55 million, not $2.85 million.

According to Keshav, in April 1999 Jariwala entered into an agreement to purchase the Mesquite Days Inn from Wichita Falls B & R Investment, Inc. ("Wichita") for $2.7 million, later lowered by amended agreement to $2.55 million.  In a second agreement, dated July 7, 1999 between Jariwala and Sonia, Sonia agreed to pay $2.85 million.  Keshav was unaware of these agreements until he conducted discovery in this litigation.

Unlike Keshav, who was unaware of the proposed hotel purchase until July 1999, UCB had been involved for several months and was aware that Jariwala was purchasing the property from Wichita.  A UCB committee suggested that $200,000 be placed in CDs as additional collateral for the UCB loan because it was a flip transaction, and UCB wanted the profit from the flip as additional collateral to protect the bank.  UCB did not ensure that other investors were aware of the flip, the profit made from that transaction, or the additional collateral, even though disclosure of collateral is routine.  When UCB did disclose the CDs to Keshav in 2004, their value had increased to approximately $300,000.

Keshav also maintains that the $200,000 in CDs were not contributed as additional collateral but were created with loan proceeds, i.e., funds that Sonia borrowed.  Therefore, the money

used to fund the CDs was Sonia's property.  Keshav avers that UCB aided in concealing the CDs, laundered money for Jariwala and B. Patel, and knew that they were going to profit from the transaction and that the CDs represented their profit.

Keshav also cites evidence that UCB began in 2004 to solicit him to make additional contributions to Sonia, advising him that he would need to contribute $115,000 to resolve the Days Inn and other claims, threatening to collect on his Guaranty, before all others, if he did not, and offering to lend him the money to make additional contributions.  During meetings in 2004, Keshav first learned of the CDs.

UCB's attorney, Tim A. Forgerson, Esquire ("Forgerson"), attempted to facilitate the sale of Keshav's interest in Sonia to Sukhbhai Patel ("S. Patel"),[12] but Keshav refused.  Sonia was nevertheless sold to S. Patel, and the UCB note was refinanced with other funds, allowing Jariwala and B. Patel to access their CDs. Forgerson permitted S. Patel to attest falsely that he owned 100% of Sonia, despite Forgerson's knowledge that Keshav had not sold his interest in Sonia.  And despite his knowledge that DIW had made a claim against Sonia, Forgerson and UCB permitted S. Patel to represent that there were no outstanding and undisclosed claims. Keshav was unaware that the closing had occurred, and S. Patel sent him a tax return that showed that Keshav had no interest in Sonia.

_____

[12]S. Patel's name is also spelled "Sukhabhai" in the record.

DIW sued Keshav and others shortly thereafter.

Keshav points to evidence that UCB had a close and extensive business relationship with Jariwala, that certain UCB directors had business relationships with him, and that UCB relied on Jariwala to generate substantial business for the bank.  He also relies on evidence that Forgerson represented UCB, Mohammed Younus ("Younus"), a UCB Vice President who was integrally involved in the Days Inn transaction, and Jariwala, including during the closing of the 2004 transaction, but that UCB and Younus did not disclose their business relationships to him.

Keshav sues UCB and other third-party defendants, alleging that they are liable for indemnification and contribution, securities fraud, breach of contract, breach of fiduciary duty/minority oppression, tortious interference with contract, fraudulent inducement, fraud, fraudulent transfer under TUFTA, attorney's fees, costs, and expenses, conversion, and civil conspiracy.

X

UCB contends that it is entitled to summary judgment dismissing all of Keshav's claims based on his inability to prove damages and the assertion that he waived any claims against UCB. The court will address below, in the context of Keshav's specific claims that survive summary judgment, whether UCB is entitled to dismissal on the basis that Keshav cannot prove damages.  The court

now examines whether UCB is entitled to summary judgment based on waiver.

Because waiver is an affirmative defense, UCB will bear the burden of proof at trial. *Trinet Corp. Realty Trust v. Microsoft Corp.*, 2004 WL 1217936, at *3 (N.D. Tex. June 2, 2004) (Fitzwater, J). Accordingly, to obtain summary judgment, UCB must meet the beyond peradventure standard.

Under Texas law, the essential elements of waiver are "(1) an existing right, benefit, or advantage; (2) knowledge, actual or constructive, of its existence; and (3) actual intent to relinquish the right, which can be inferred from conduct." *First Interstate Bank of Ariz., N.A. v. Interfund Corp.*, 924 F.2d 588, 595 (5th Cir. 1991) (citing, *inter alia*, *Edwin M. Jones Oil Co. v. Pend Oreille Oil & Gas Co.*, 794 S.W.2d 442, 447 (Tex. App. 1990, writ denied)).

> A waiver takes place when one dispenses with the performance of something that he has a right to exact, or when one in possession of any right, whether conferred by law or contract, with full knowledge of the material facts, does or forbears to do something, the doing or forbearing of which is inconsistent with the right.

*Mo.-Kan.-Tex. R.R. Co. v. Heritage Cablevision of Dallas*, 783 S.W.2d 273, 280 (Tex. App. 1989, no pet.) (citing *Ford v. Culbertson*, 158 Tex. 124, 138-39, 308 S.W.2d 855, 865 (1958)). Additionally, under Texas law, "[w]aiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding

facts and circumstances." *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (citation omitted).

UCB argues that the following statements contained in an August 2004 letter from a Nitu Patel ("N. Patel"), acting as Keshav's agent, to Younus, a UCB Vice President, are sufficient to prove waiver:

> [Keshav] assures me that this is not the position taken because of issues with you or [UCB] but rather with members of LLC.  He values [sic] relationship with you and [UCB] but cannot agree with your request to meet with LLC partners and outsiders who have not acted properly in the past.

UCB App. 138.  UCB appears to premise its waiver argument on the the first statement, contending that Keshav intentionally and expressly stated that he had no issues with UCB regarding the transaction.  UCB maintains that Keshav then had full knowledge of all material facts supporting the allegations of his third-party complaint.

Keshav responds that neither he nor N. Patel had full knowledge of the material facts at the time of the letter; he did not knowingly and intentionally waive any claims against UCB; the N. Patel statements are inadmissible hearsay; N. Patel lacked actual authority to waive claims on Keshav's behalf; and the letter's plain language does not show waiver.

The court need only address whether UCB has established beyond peradventure that Keshav actually intended to waive his claims

against UCB.   UCB does not specify a theory of waiver.   It simply asks the court to conclude from N. Patel's statements that Keshav waived his claims.   UCB's conclusory assertion that Keshav did so by stating, with full knowledge of the material facts, that he in effect had no issues with UCB is insufficient to establish waiver beyond peradventure.   To the extent that UCB contends that the statements are an express waiver, its argument fails.   The plain language of the statements does not refer to legal claims, and UCB has failed to produce any evidence that would permit such an inference.   If it is UCB's contention that waiver can be inferred, the cited statements are insufficient of themselves to comprise circumstances that clearly demonstrate Keshav's intent to waive his claims.

In sum, UCB has failed to establish that the statements constitute Keshav's voluntary relinquishment of his right to sue, or that they amount to conduct inconsistent with claiming a known right.   Moreover, even if the court were to assume that the N. Patel letter demonstrates Keshav's intent to waive claims, there are genuine issues of material fact as to whether Keshav and N. Patel had full knowledge of the material facts relating to Keshav's legal claims at the time the letter was written, and whether N. Patel had authority to effect a waiver on Keshav's behalf.   The court is unable to hold in such circumstances that UCB has shown beyond peradventure that Keshav voluntarily relinquished his right

to sue.  Accordingly, UCB is not entitled to summary judgment based
on the affirmative defense of waiver.

## XI

UCB moves for summary judgment on Keshav's claims for
indemnification and contribution and tortious interference with
contract.  Keshav responds that he is not pursuing these claims
against UCB.  Accordingly, based on this concession, the court
denies UCB's motion in part as moot.

## XII

UCB maintains that it is entitled to summary judgment
dismissing Keshav's claim under the Texas Securities Act ("TSA").

### A

UCB contends that Keshav cannot recover under the TSA because
liability can only be imposed on someone who offers or sells a
security by means of an untrue statement of material fact, UCB made
no representations concerning Keshav's purchase of an interest in
Sonia, it is unclear whether Keshav's interest in Sonia is a
"security" under the TSA because it may not be an investment
contract, UCB did not as a matter of law offer or sell a security
to Keshav, and there is no allegation or evidence to show that UCB
directly or indirectly controlled a seller, buyer, or issuer of a
security.

Keshav responds that UCB is liable under the TSA for aiding
and abetting Jariwala and B. Patel in their commission of

securities fraud.  He contends that UCB does not dispute that Jariwala and B. Patel committed fraud; the TSA provides for aider and abettor liability; Jariwala and B. Patel intentionally deceived him by misrepresenting the purchase price of the Days Inn property and the siphoning of $300,000 from the proceeds of the UCB loan; UCB aided and abetted Jariwala and B. Patel's violations of the TSA; and that Keshav's membership in Sonia is a "security" under the TSA.

UCB replies that it has not conceded that Jariwala and B. Patel committed fraud; Keshav has not pleaded aider and abettor liability but has raised it for the first time in his summary judgment response; Keshav has not adduced summary judgment evidence on the issue whether his membership interest in Sonia is a "security," because Texas statutory law does not define a membership in a limited liability corporation as a "security"; he must therefore show, but cannot, that his interest is an "investment contract"; and there is no summary judgment proof that UCB either intended to deceive Keshav or acted with reckless disregard for the truth of the representations made by Jariwala and B. Patel, assuming they are the primary violators, because there is no proof of what representations Jariwala and B. Patel made to Keshav regarding the Sonia loan or of UCB's knowledge of such representations.

B

The court concludes as a threshold matter that Keshav has pleaded aider and abettor liability.[13]   In ¶¶ 39 and 40 of his second amended third-party complaint, Keshav alleges a claim for securities fraud.  In ¶ 39 he incorporates all allegations from the preceding paragraphs, and in ¶ 16 he explicitly alleges, *inter alia*, that UCB "aided and abetted the activities of the other [t]hird-party defendants."  Jariwala and B. Patel are both third-party defendants and are sued for securities fraud.  Therefore, Keshav is not improperly relying on an unpleaded basis for liability against UCB.

C

To establish aiding and abetting liability under the TSA,

> a plaintiff must demonstrate 1) that a primary
> violation of the securities laws occurred; 2)
> that the alleged aider had "general awareness"
> of its role in this violation; 3) that the
> actor rendered "substantial assistance" in
> this violation; and 4) that the alleged aider
> either a) intended to deceive plaintiff, or
> [b]) acted with reckless disregard for the
> truth of the representations made by the
> primary violator.

*In re Enron Corp. Secs., Derivative & ERISA Litig.*, 258 F.Supp.2d 576, 608 (S.D. Tex. 2003) (quoting *Frank v. Bear Stearns & Co.*, 11

---

[13]Keshav also alleges that UCB is liable for a primary violation.  In his second amended third-party complaint, Keshav avers that UCB and others caused him to invest in Sonia by making "untrue statements of material fact," in violation of § 33 of the TSA.

- 37 -

S.W.3d 380, 384 (Tex. App. 2000, pet. denied)).  Because Keshav

will have the burden at trial of proving the essential elements of

aiding and abetting securities fraud, UCB need only point the court

to the absence of evidence of any essential element.  *See Celotex

Corp.*, 477 U.S. at 323.  Once it does so, Keshav must go beyond his

pleadings and designate specific facts showing that there is a

genuine issue for trial.  *See id.* at 324; *Little*, 37 F.3d at 1075.

The absence of evidence of one essential element of the claim

mandates the entry of summary judgment.  *See Edgar v. Gen. Elec.

Co.*, 2002 WL 318331, at *4 (N.D. Tex. Feb. 27, 2002) (Fitzwater,

J.) (citing *Celotex Corp.*, 477 U.S. at 323).

UCB has pointed to the absence of evidence that it is liable

as a primary violator.  It has not, however, discharged its initial

burden of pointing to the absence of evidence that it can be held

liable as an aider and abettor of a primary violation under the

TSA, a claim that Keshav has properly pleaded.[14]  To establish UCB's

liability as an aider and abettor of securities fraud, Keshav is

not required to prove that UCB committed a primary violation——i.e.,

that it offered or sold a security to Keshav by means of an untrue

statement of material fact, made any representations to Keshav

concerning his purchase of an interest in Sonia, or that UCB

_____

[14]UCB has pointed to the absence of evidence of its liability
as a primary violator, but Keshav has pleaded both bases for
holding UCB liable under the TSA.  Keshav has not responded to
UCB's contention, relying instead on his aiding and abetting
theory.

directly or indirectly controlled a buyer, seller, or issuer of a security. Accordingly, none of these allegations is sufficient to point to the absence of evidence of aider and abettor liability under the TSA. This leaves the court to consider UCB's allegation regarding Keshav's membership interest in Sonia and whether it qualifies as a security under the TSA.

Keshav must show, *inter alia*, that *some* primary violation occurred in order to establish UCB's liability as an aider and abettor, and a primary violation must involve a security. Under Texas law, a party may be liable for a primary violation when it

> offers or sells a *security* . . . by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.

Tex. Rev. Civ. Stat. Ann. art. 581-33(A)(2) (Vernon 2006) (emphasis added). UCB posits that it is "unclear" whether Keshav's membership interest in Sonia is a security under the TSA. Although UCB does not appear to move for summary judgment on Keshav's aiding and abetting claim, it is at least conceivable that this allegation relates to whether Keshav has adduced sufficient evidence of a primary violation, proof of which is an essential predicate for an aiding and abetting claim. UCB's initial burden, however, is to point to the absence of evidence. This initial burden, while not difficult, is not discharged when a summary judgment movant merely asserts that it is "unclear" whether evidence exists to support the

claim.[15]   Moreover, in assessing whether UCB has met its initial

burden of pointing to the absence of evidence, the court will not

consider arguments made for the first time in UCB's reply brief.

*See, e.g., Senior Unsecured Creditors' Comm. of First RepublicBank*

*Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater,

J.).   Accordingly, the court holds that UCB has not met its initial

burden of pointing the court to the absence of evidence that it can

be held liable under the TSA as an aider and abettor of a primary

violation of the Act.

Even if the court were to assume that UCB has met its initial

burden, it would still deny summary judgment.   Keshav has raised a

genuine issue of material fact as to whether his membership

interest in Sonia qualifies as a "security" under the TSA.

> The Securities Act of 1933 and the Texas
> Securities Act define the term "security" in
> virtually the same wording.   For that reason
> Texas courts look to federal interpretations
> of the meaning of the term "security."
> Specifically, Texas courts have adopted the
> Howey test to determine what constitutes an
> investment contract.

*Long v. Schultz Cattle Co.*, No. CA:3-84-1464-D, at 9 (N.D. Tex.

Sept. 4, 1990) (Fitzwater, J.) (citations omitted).   Under the

---

[15]UCB does not even appear to rely on this assertion.   It
states next that the court does not need to resolve whether
Keshav's membership interest is a security because UCB did not
offer or sell a security to Keshav.   As the court notes above
however, Keshav is not required to show that UCB committed a
primary violation of the TSA in order to establish its liability as
an aider and abettor.

*Howey* test, "'[t]o determine whether a particular financial relationship constitutes an investment contract, "[t]he test is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others."'"   *Barnes v. Bell Helicopter Textron, Inc.*, No. 3:92-CV-0694-D, at 16 (N.D. Tex. June 23, 1995) (Fitzwater, J.) (quoting *Int'l Bhd. of Teamsters v. Daniel*, 439 U.S. 551, 558 (1979) (quoting *SEC v. W. J. Howey Co.*, 328 U.S. 293, 301 (1946))).

Keshav has presented evidence that he invested in Sonia with the expectation that he would be a passive investor with no operational role and with the expectation that the profits would result solely from the efforts of others.   This evidence is sufficient to demonstrate the existence of a genuine issue of material fact concerning whether his membership in Sonia qualifies as an investment contract.

D

The court now addresses UCB's contention that Keshav is unable to prove damages on any claim.   UCB posits that proof of damages is an essential element of all of Keshav's claims, including his action under the TSA.   It contends that Keshav has failed to meet his burden of providing evidence of the current value of his interest in Sonia, from which damages could be calculated.   UCB argues that, absent such evidence, there is no proof that Keshav

suffered any loss on his initial $145,000 investment in Sonia.

Keshav responds that he has created a genuine issue of material fact as to damages, and that he never would have invested in Sonia had he known of the flip nature of the transaction or of the CDs. He has produced evidence that he made an initial investment of $145,000, and he points to the fact that Sonia's financial statements suggest that his investment is worth nothing due to negative cash flow and negative equity. He maintains that he has been deprived of his ownership interest in Sonia, or at least that there is a factual dispute as to the extent of his ownership interest. Keshav also contends that his potential liability and legal expenses in the lawsuit brought by DIW would never have arisen but for UCB's conduct.

The court holds that Keshav has demonstrated the existence of a genuine issue of material fact regarding whether he has sustained damages. He has adduced proof concerning the extent of his ownership interest in Sonia and of Sonia's distressed financial condition, as evidenced by a December 2004 financial statement. This evidence alone is sufficient for Keshav to defeat summary judgment on the issue of damages under the TSA.

XIII

UCB also moves for summary judgment dismissing Keshav's breach of contract claim. It maintains that he is suing UCB for breaching Sonia's LLC agreement, but that it cannot be held liable for

- 42 -

breaching the agreement because it is not a party to it.   Keshav responds that UCB breached its contracts with Sonia, including the Business Loan Agreement.   He also relies on an alleged breach of at least one Purchase and Sale Agreement and amendments thereto.

The court holds that Keshav has not shown that UCB can be held liable to him for breaching Sonia's LLC agreement, to which it was not a party.   Nor can Keshav avoid summary judgment by relying on allegations that UCB breached other contracts that Keshav has not pleaded in his second amended third-party complaint.   *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.") (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)).   Accordingly, the court grants summary judgment dismissing Keshav's breach of contract claim against UCB.

XIV

UCB moves for summary judgment on Keshav's breach of fiduciary duty and minority oppression claim.[16]

A

UCB contends that, as a matter of law, a creditor-debtor

_____

[16]Keshav refers to a claim for "minority oppression" in the heading of his fourth cause of action ("Breach of Fiduciary Duty/Minority Oppression").   In his summary judgment response, however, he does not pursue this claim as an independent cause of action against UCB.   Accordingly, the court need not address it.

relationship does not create fiduciary duties, and that a relationship between a bank and its customer does not create fiduciary duties. UCB maintains that Keshav alleges that a breach of fiduciary duty occurred as a result of third-party defendants' refusal to perform under the Sonia LLC agreement, that UCB was not a party to the agreement, and that it cannot have failed or refused to perform under the agreement. It also argues that Keshav's assertion that UCB actively participated and aided and abetted the parties in breaching their fiduciary duties is simply a restatement of his civil conspiracy claim, and that it should be dismissed for the same reasons as should that claim. It posits that Keshav has failed to produce any evidence, and that the only action UCB took concerning the refinancing was to accept payoff of the Sonia note. UCB asserts that it did not have a fiduciary relationship with Keshav, and he has not set forth any facts that establish a prior, separate relationship with UCB that would support an informal fiduciary relationship.[17]

Keshav responds that UCB aided and abetted[18] B. Patel's and Jariwala's breach of their fiduciary duties as organizers and

---

[17]For the same reasons described *supra* at § XII(D) (discussing Keshav's TSA claim), the court rejects UCB's contention that Keshav is unable to prove damages for breach of fiduciary duty.

[18]The court refers throughout this memorandum opinion to Keshav's aider and abettor theory because that terminology is used in the briefing to refer to UCB's alleged liability based on B. Patel's and Jariwala's breach of their fiduciary duties to Keshav.

promoters, officers, and controlling shareholders of Sonia.  He contends that, in Texas, liability for breach of fiduciary duties extends to any party who participates in or facilitates the breach, that he has demonstrated that B. Patel and Jariwala breached their fiduciary duties to him, and that UCB was an active participant. Keshav also contends that the elements of aiding and abetting a breach of fiduciary duty are distinct from those for civil conspiracy.

UCB replies that Keshav's claim should be dismissed because he has not presented any evidence or cited any authority to support his contentions that B. Patel and Jariwala owed Keshav fiduciary duties as organizers, promoters, officers, or controlling shareholders of Sonia, that there was an informal confidential relationship giving rise to a fiduciary duty, that there was a special relationship beyond the corporate relationship with B. Patel and Jariwala, or that UCB actively participated in or had any knowledge of any breach of a fiduciary duty.

B

Under Texas law, the elements of a claim for breach of fiduciary duty are

> (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant's breach of its fiduciary duty owed to the plaintiff; and (3) injury to the plaintiff or benefit to the defendant resulting from the defendant's fiduciary duty breach.

*Sealed Party v. Sealed Party*, 2006 WL 1207732, at *5 (S.D. Tex. May

- 45 -

4, 2006) (citing, *inter alia*, *Kelly v. Gaines*, 181 S.W.3d 394, 414
(Tex. App. 2005, pet filed); *Punts v. Wilson*, 137 S.W.3d 889, 891
(Tex. App. 2004, no pet.)).  Additionally, "[i]t is settled as the
law of [Texas] that where a third party knowingly participates in
the breach of duty of a fiduciary, such third party becomes a joint
tort-feasor with the fiduciary and is liable as such." *Cox Tex.
Newspapers, L.P. v. Wootten,* 59 S.W.3d 717, 721 (Tex. App. 2001,
pet. denied) (citing *Kinzbach Tool Co. v. Corbett-Wallace Corp.*,
138 Tex. 565, 573-75, 160 S.W.2d 509, 514 (1942)).  Moreover, "[a]
cause of action premised on contribution to a breach of a fiduciary
duty under *Kinzbach* must involve the knowing participation in such
a breach." *Id.* (citing *Kinzbach Tool Co.*, 160 S.W.2d at 514).

The bulk of UCB's summary judgment contentions point the court
to the absence of evidence that UCB is itself liable as a fiduciary
of Keshav.[19]  UCB does, however, point to the absence of evidence
of its potential liability for aiding and abetting a breach of
fiduciary duty.   UCB also characterizes Keshav's aiding and
abetting claim as a mere "restatement" of his action for civil
conspiracy and suggests that both claims should be dismissed for

---

[19]UCB points, *inter alia*, to the absence of evidence that a
fiduciary relationship existed between it and Keshav.  In his
response, however, Keshav relies solely on an aiding and abetting
theory and appears to abandon any claim that UCB is directly and
primarily liable as a fiduciary.

- 46 -

the same reasons.[20]  The burden therefore shifts to Keshav to adduce evidence demonstrating that there is a genuine issue of material fact concerning UCB's participation in the breach of a duty by a fiduciary.  To recover against UCB as an aider and abettor, Keshav is not required to prove the existence of a fiduciary relationship between UCB and him; he need only establish that UCB participated in the breach of a fiduciary duty.[21]  *See Cox Tex. Newspapers*, 59 S.W.3d at 721.

The evidence Keshav cites in his response brief, much of which the court has already discussed, is sufficient to create a genuine issue of material fact as to whether UCB knowingly participated in a breach of a fiduciary duty.[22]  The summary judgment record contains evidence that would permit a reasonable trier of fact to

_____

[20]The court rejects this contention.  Civil conspiracy is a separate cause of action that requires, *inter alia*, an underlying tort and a "meeting of the minds" among the coconspirators "on the object or course of action" to be taken.  *Franklin Sav. Ass'n. v. FDIC*, No. 3:92-CV-1536-D, at 9 (N.D. Tex. Mar. 23, 1993) (Fitzwater, J.) (discussed *infra* at § XVIII).  By contrast, a cause of action under *Cox* and *Kinzbach* requires only the knowing participation of a party in a breach of a fiduciary duty and does not require a conspiratorial agreement.

[21]The court need not decide whether Keshav has adduced sufficient evidence that B. Patel and Jariwala are fiduciaries of Keshav, because UCB did not meet its initial burden of pointing in its opening brief to the absence of evidence of a fiduciary relationship between them, or that UCB knew of such a fiduciary relationship.  To the extent UCB presented this contention in its reply brief, the assertion came too late to shift the summary judgment burden to Keshav.

[22]The court has not relied on Keshav's affidavit testimony, to which UCB has made evidentiary objections.

find that UCB participated in and facilitated the very
transactions that are the subject of Keshav's third-party
complaint.  Specifically, Keshav has adduced evidence that UCB
knew, *inter alia*, that the proposed purchase of the Days Inn
property was a flip transaction from which Jariwala would profit,
and that it actively concealed the nature of the CDs from Keshav by
describing them at one point as additional collateral.  This proof
is sufficient to demonstrate a genuine issue of material fact as to
whether UCB aided and abetted a breach of fiduciary duty.

Accordingly, the court holds that UCB has failed to show that
Keshav cannot recover against it for aiding and abetting a breach
of fiduciary duty.

XV

UCB moves for summary judgment dismissing Keshav's claims for
fraudulent inducement and fraud.

A

UCB states that Keshav's claim for fraudulent inducement,
while vague, appears to rest on the assertion that UCB fraudulently
induced him to enter into the Sonia LLC agreement.  It points to
evidence from Keshav's deposition that he did not rely on UCB to
enter into the agreement.  And UCB assumes that Keshav is also
alleging that UCB hid the fact that the CDs were pledged as
collateral for the loan, cites a document that Keshav executed that
states there were pledgors on the loan, and posits that Keshav's

lack of understanding of the word "pledgors" and his trust in Sonia's attorney is not proof that supports his claim.  Regarding alleged fraudulent and illegal activities based on UCB's inducement of Keshav in 2004 to come up with money to refinance the loan and get it off UCB's books, UCB argues that the evidence is undisputed that Keshav did not advance any monies other than his original 1999 investment, so he could not have been damaged from these activities.

UCB also assumes from Keshav's pleadings and discovery responses that he is asserting that UCB undertook fraudulent and illegal activities in relation to the 2004 sale of the hotel property and refinancing of Sonia's debt.  It contends that Keshav cannot explain why the fact that there were two CDs put up as additional collateral, and of which he was on notice, was somehow harmful to him, particularly since additional collateral would benefit a guarantor.  UCB concludes by contending that Keshav did not suffer injury; UCB took no action to induce him to enter into Sonia and purchase the Days Inn property; the only damages he claims are the loss of his initial investment in Sonia and monies owed under the Guaranty; and since UCB did not induce him to invest in Sonia or require that he sign the Guaranty, he has no claim for damages for fraud or fraudulent inducement.

Keshav responds that he has a viable claim for common law fraud based on his lack of knowledge that Sonia was only paying

$2.55 million rather than $2.85 million for the Days Inn property, and that UCB was using Sonia loan funds to create CDs in the names of Jariwala's brother-in-law and B. Patel's father.  Keshav also disputes that he was aware of the CDs or the details of their funding, the actual purchase price of the hotel property, the actual amount of UCB's loan, the flip transaction that occurred, or the profit that Jariwala and B. Patel made.  He contests the assertion that the CDs did not injure him, and he posits that there is ample evidence of fraud.

B

Keshav alleges fraudulent inducement and fraud based on representations or misrepresentations, not nondisclosures.  *See* 2d Am. Third-Party Compl. ¶¶ 57, 59.  He cannot now raise new allegations of fraud by nondisclosure in order to defeat summary judgment.  *See Becker v. Nat'l Educ. Training Group, Inc.*, 2002 WL 31255021, at *6 (N.D. Tex. Oct. 7, 2002) (Lynn, J.) (holding that plaintiff "is bound to his [fraud by misrepresentation] pleadings and cannot assert an unpleaded nondisclosure theory at this late stage in the litigation"); *see also Cutrera*, 429 F.3d at 113. Because these are the only grounds on which he relies to avoid summary judgment and they exceed the scope of his second amended third-party complaint, the court holds that UCB is entitled to summary judgment dismissing Keshav's claims for fraud and

fraudulent inducement.[23]

XVI

UCB moves for summary judgment dismissing Keshav's claim under TUFTA.

UCB argues that Keshav's TUFTA claim is based on UCB's transfer of assets to S. Patel but that UCB did not transfer any of Sonia's assets to him.  It contends it had a lien on the hotel but did not own it and therefore could not have transferred it to a third party.  UCB asserts alternatively that Keshav is an equity holder, not a "creditor" within the meaning of TUFTA, and that he has failed to adduce evidence of which assets were transferred, much less that such a transfer was for less than reasonably equivalent value.

Keshav responds by alleging a new theory of fraudulent transfer that he did not plead.  In his second amended third-party complaint, he alleges that UCB and others caused Sonia to transfer assets to S. Patel.  2d Am. Third-Party Compl. ¶ 61.  In his summary judgment response, however, he argues that "[t]he 'transfer' at issue was the transfer of funds to create the CDs in 1999 and ultimate release of those CDs to [Jariwala] and [B. Patel] in 2004."  Keshav July 13, 2006 Br. 37.  Keshav cannot avoid summary judgment on that basis.  *See Cutrera*, 429 F.3d at 113.

---

[23]Keshav mentions "fraudulent representation" in the heading of part (f), but he only presents argument on alleged nondisclosures.

Accordingly, the court grants summary judgment dismissing his claim under TUFTA.

XVII

UCB moves for summary judgment on Keshav's conversion claim.

A

UCB contends that Keshav cannot prevail on his allegation that his membership in Sonia was converted because he still owns 20% of Sonia.  UCB argues in the alternative that Keshav has presented no evidence that UCB ever exercised "dominion or control" over his membership interest in Sonia, which is an essential element of a conversion claim.  UCB also posits that Keshav is unable to show injury because he was never forced to pay money under his Guaranty or to pay additional money as a member of Sonia.

Keshav responds that UCB converted $200,000 of Sonia's and Keshav's property by funneling that money to Jariwala and B. Patel. He maintains that UCB, followed by Jariwala and B. Patel, wrongfully exercised dominion and control over the $200,000 that was part of the Sonia loan proceeds. Specifically, Keshav argues that UCB funded the CDs out of the loan monies, put them in the names of relatives of Jariwala and B. Patel with knowledge that they were the beneficial owners, and released the funds in 2004, all without the consent of Keshav or Sonia.  Keshav also argues that he was injured in the amount of his initial investment of $145,000 and $200,000 plus interest.

UCB replies that it did not have fair notice that Keshav intended to bring a derivative claim for conversion, because in his third-party complaint he alleges conversion as an individual claim. It also asserts that Keshav testified by deposition that the conversion claim refers to his membership interest in Sonia. And it argues that it lacked fair notice that Keshav is relying on conversion of the CD funds rather than his membership interest in Sonia. Addressing the merits of this claim, UCB posits that Keshav lacks evidence to defeat summary judgment. It maintains that there is no property that Sonia or Keshav owned or possessed or had the right to possess immediately; the CDs were willingly created with the knowledge of Sonia's management to serve as collateral for the loan; UCB did not wrongfully exercise dominion or control over the CDs to the exclusion of Sonia because the CDs were created with Sonia's full knowledge and understanding; Keshav's consent was not required because he is a minority shareholder; and Keshav's assertion that Sonia did not consent is a complete misrepresentation of the facts.

B

The court rejects UCB's contention that Keshav's conversion claim exceeds the scope of what he has pleaded or disclosed during discovery. Keshav's claim refers to his beneficial ownership in certain property entrusted to UCB and the other third-party defendants. It is not explicitly premised on his membership

interest in Sonia.  The court will not limit Keshav's claim based on his deposition testimony because UCB presented that evidence in a reply appendix that it never obtained leave of court to file, and that the court, by its July 31, 2006 order, refused to consider absent such leave.  The court accordingly declines to hold that Keshav's conversion claim is improperly raised.

C

Turning to the merits, the court holds that UCB is entitled to summary judgment because Keshav has failed to produce evidence sufficient to permit a reasonable trier of fact to find in his favor.  Under Texas law,

> [c]onversion is an act of dominion and control wrongfully exerted over another's personal property and inconsistent with that person's right in the property.  An act of conversion does not have to be an actual manual taking but merely an act that is such active interference with the owner's right of property or control as to deprive him of its free use and enjoyment.

*Stasan, Inc. v. Network Staffing Servs., Inc.*, 2004 U.S. Dist. LEXIS 7432, at *20 (N.D. Tex. Apr. 29, 2004) (Fitzwater, J.) (citing *Pierson v. GFH Fin. Servs. Corp.*, 829 S.W.2d 311, 314 (Tex. App. 1992, no writ) (citations omitted)).  Even assuming *arguendo* that Keshav has produced evidence sufficient to enable a reasonable trier of fact to find that UCB exercised dominion and control over Keshav's interest in Sonia's property by using the loan monies to fund the CDs, Keshav has not shown a basis on which to conclude

- 54 -

that such conduct was "wrongful."  Keshav, a minority member of
Sonia, has produced no evidence that UCB was required to obtain his
consent before funding the CDs and subsequently releasing them.[24]
Instead, a reasonable trier of fact could find from the summary
judgment evidence that UCB acted with Sonia's consent, given by
Dolotray C. Patel, Sonia's managing member and signatory to the
loan documents.

Accordingly, the court holds that UCB is entitled to summary
judgment dismissing Keshav's claim for conversion.

XVIII

UCB next moves for summary judgment dismissing Keshav's cause
of action for civil conspiracy.

A

UCB maintains that Keshav must show that it is liable for an
underlying intentional tort, he has not, and, absent an underlying
tort, Keshav has no claim for civil conspiracy.  It also points to
the absence of evidence of a meeting of the minds involving UCB and
others for the purpose of inflicting a wrong on Keshav, the absence
of evidence of one or more unlawful, overt acts in furtherance of
the conspiracy, and the absence of evidence that Keshav suffered

---

[24]Keshav characterizes himself as a minority shareholder and
"passive investor" at various points in his response. *See* Keshav
July 13, 2006 Br. 1, 29.

injury.[25]

Keshav responds that he can premise his claim on his underlying fraud, breach of fiduciary duty, tortious interference, conversion, or fraudulent transfer claims; UCB and its coconspirators employed unlawful means in the form of money laundering; UCB engaged in a series unlawful acts that he has already alleged in the context of his substantive claims; there was a meeting of the minds among UCB, Jariwala, and B. Patel, as evidenced by Younus's testimony; and Keshav was injured in the amount of $145,000, his initial investment in Sonia, the $200,000 in siphoned loan funds, an additional $100,000 unaccounted for at closing, and the profit from the flip.  UCB replies that Keshav has improperly attempted to replead his causes of action as a new claim for money laundering, Keshav has failed to produce any evidence to support his response allegations of unlawful acts in ¶¶ 122 and 123, and there is no evidence that a transaction by which Jariwala profited amounts to a conspiracy against Keshav.

B

"An actionable claim for civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means."  *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983).  The essential elements

---

[25]For the same reasons described *supra* at § XII(D) (discussing Keshav's TSA claim), the court rejects UCB's contention the Keshav is unable to show damages.

of conspiracy are (1) two or more persons, (2) an object to be accomplished, (3) a meeting of minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as the proximate result. *Franklin Sav. Ass'n*, No. 3:92-CV-1536-D, at 9. In Texas, civil conspiracy is a "derivative" tort by which Keshav can hold one conspiracy participant liable for the torts committed by another participant if the torts were committed in furtherance of an unlawful conspiracy. *See Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). As a "derivative" tort, Keshav must "plead and prove another substantive tort upon which to base a civil conspiracy claim." *Grizzle v. Tex. Commerce Bank, N.A.*, 38 S.W.3d 265, 285 (Tex. App. 2001), *rev'd in part on other grounds*, 96 S.W.3d 240 (Tex. 2002).

Keshav cannot now assert an entirely new claim for money laundering for the purpose of providing a predicate for his civil conspiracy claim and avoiding summary judgment. *See Cutrera*, 429 F.3d at 113. Neither can Keshav⸺in light of the court's ruling above⸺premise his civil conspiracy claim on his actions for tortious interference, conversion, and fraudulent transfer, each of which is being dismissed on motion for summary judgment. Keshav can, however, predicate a claim for civil conspiracy on his breach of fiduciary duty claim, to the extent that he is able to prove at trial that UCB knowingly participated in or facilitated a breach of a fiduciary duty owed to Keshav.

- 57 -

UCB has pointed to the absence of evidence of one or more overt, unlawful acts and of a meeting of the minds.  It has thus shifted the burden to Keshav to adduce evidence from which a reasonable trier of fact could find in his favor on these elements. To the extent that Keshav can show that UCB is liable for a breach of fiduciary duty committed by Jariwala or B. Patel, he may be able to succeed on a claim for civil conspiracy.  Moreover, Keshav's summary judgment evidence raises a genuine issue of material fact regarding the meeting of the minds element of a civil conspiracy. Keshav relies on the Younus deposition, in which Younus essentially testified that the bank arranged the flip transaction with Jariwala and B. Patel, and that the resulting profits would accrue to Jariwala.  A reasonable trier of fact could find a meeting of the minds on the basis of this testimony.

Accordingly, the court holds that there is a genuine issue of material fact that precludes summary judgment on Keshav's civil conspiracy claim.

## XIX

The court next addresses UCB's motion for summary judgment on Keshav's claim for attorney's fees and costs.  Keshav originally asserted no specific basis for recovering attorney's fees and costs; he simply alleged entitlement to fees and costs pursuant to "applicable Texas law."  In his response brief, however, Keshav seeks attorney's fees and costs pursuant to his breach of contract

and TUFTA claims.  In light of the court's rulings granting summary judgment as to both of these claims, the court is left with no substantive basis on which to award this relief.

The court therefore holds that Keshav is not entitled to recover attorney's fees and costs.[26]

XX

The court now addresses UCB's objections to Keshav's summary judgment evidence and Keshav's pending motion for leave to file a surreply to UCB's summary judgment reply.

The court denies UCB's evidentiary objections as moot. Alternatively, it holds that the objections are moot in part and denied in part.  The court relies on ¶ 25 of Keshav's Affidavit in support of its alternative holding denying UCB's motion for summary judgment on Keshav's TSA claim.  *See supra* § XII(C).  But even if the court were to consider UCB's objections to ¶ 25 based on relevance and the best evidence rule, it would hold that the objections lack merit and overrule them.

Keshav moves for leave to file a surreply to respond to UCB's evidentiary objections and arguments that he maintains are new and inaccurate and raised for the first time in UCB's reply brief. Specifically, Keshav contends that he provided UCB fair notice of all his claims, he has standing to raise derivative claims on

---

[26]By "costs" the court means costs that are available under a fee-shifting statute, not costs that are taxable under Rule 54(d)(1).

behalf of Sonia, UCB knowingly participated in B. Patel's and Jariwala's breach of fiduciary duties owed to him, and UCB had a legal duty to inform him of the alleged fraud.

Even if the court were to consider Keshav's surreply, it would not affect the court's rulings. The court has denied UCB's evidentiary objections as moot. Alternatively, it has held that they are in part moot and are in part overruled, ruling that the cited portion of Keshav's Affidavit is admissible. Consequently, it need not grant Keshav an opportunity to respond to UCB's evidentiary objections via a surreply. And in holding that Keshav's fraud, fraudulent transfer, and breach of contract claims are improperly raised for the first time in his summary judgment response, the court has not relied on the UCB reply brief arguments to which Keshav objects. The remaining objections that Keshav would present in his surreply are also moot. The court is not dismissing any of Keshav's derivative claims on the basis of standing, it is denying UCB's summary judgment motion as to Keshav's breach of fiduciary duty claim, and it is dismissing Keshav's fraud claim for the independent procedural reasons already described. The court therefore denies Keshav's motion for leave to file a surreply.

*     *     *

For the reasons set out, the court grants in part and denies in part DIW's June 15, 2006 motion for summary judgment, grants in

part and denies in part UCB's June 16, 2006 motion for summary judgment, and denies Keshav's August 15, 2006 motion for leave to file a surreply.

**SO ORDERED.**

November 1, 2006.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE